**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARIEN HOUSER** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 25-1875 |
| | : | |
| **SUPT. J. TERRA, ANTHONY** | : | |
| **LETIZIO, DEPUTY SIPPLE, CHCA** | : | |
| **HUNER, JANE/JOHN DOE,** | : | |
| **JANE/JOHN DOE** | : | |

## **MEMORANDUM**

**KEARNEY, J.**                                                                                                                                July 10, 2025

The incarcerated Darien Houser alleges state actors supervising his custody denied him medical care beginning in 2006 during his incarceration at SCI-Greene and continuing with his transfer to SCI-Phoenix in January 2020 to the present. The state actors move to dismiss. We grant their motion. We dismiss the claims against the state actors in their official capacity with prejudice. We dismiss the claim against the state actors in their individual capacity without prejudice to timely amend by pleading exhausted claims of the state actors' personal involvement in the alleged harm violative of the Eighth Amendment (and not just a disagreement with the prescribed medical care) within the two-year statute of limitations.

### I.   Alleged pro se facts

The Commonwealth has detained Darien Houser at SCI-Phoenix for at least five years. The Commonwealth detained him at SCI-Greene before 2020.  Mr. Houser faces ongoing right and left knee and ankle pain, calluses on his foot, and severe pain causing problems standing and sitting.

Dr. Anthony Letizio became the Medical Director at SCI-Phoenix at an unpleaded time.[1] Dr. Letizio "cut numerous medications" prescribed by an unidentified physician at SCI-Greene without assessing Mr. Houser; Dr. Letizio improperly reduced Mr. Houser's medications, which

Mr. Houser believes is a "mistake" causing him chronic pain; unidentified persons denied Mr. Houser surgery he has requested for eighteen years; Dr. Letizio "refuse[d] to provide [Mr. Houser] a wheelchair" or walking device at an unpleaded time; Mr. Houser requested the Facility move his cell closer to the medical area but an unpleaded person denied his request, which Dr. Letizio "could override" but did not; Dr. Letizio discontinued Mr. Houser's orthopedic referrals; and Dr. Letizio only "met with" Mr. Houser on two to three occasions and refused to meet or speak with Mr. Houser entirely beginning in 2021.[2] Mr. Houser concedes he received treatment at SCI-Phoenix but an unpleaded physical therapist determined "he could do nothing for [Mr. Houser's] condition."[3]

Facility officials and other incarcerated persons view Mr. Houser as disabled and weak, which poses a threat to his safety.[4]

**II. Analysis**

Mr. Houser now brings this civil rights action alleging Facility officials denied him medical care under the Eighth Amendment.[5] He sues SCI-Phoenix Superintendent Joseph Terra, Medical Director of SCI-Phoenix Anthony Letizio, MD, Deputy Superintendent Mandy Biser Sipple, and Corrections Health Care Administrator Britney Huner in their individual and official capacities.[6] He also alleges Jane and John Doe Superintendents and Health Care Administrators from SCI-Greene as well as Superintendent Terra, Deputy Sipple, and Administrator Huner, acquiesced to the conduct of the Jane/John Doe defendants at SCI-Greene years ago and acquiesced to Dr. Letizio's conduct at SCI-Phoenix.[7] Mr. Houser seeks $250,000 in punitive damages and an order directing "Defendants" to provide him with surgery for his legs, ankle, and knees.[8]

Mr. Houser asserts a civil rights violation for the deprivation of medical care in violation of the Eighth Amendment under section 1983. To state a civil rights claim, Mr. Houser must allege

2

(1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[9]

Facility officials violate the Eighth Amendment when they are deliberately indifferent to an incarcerated person's serious medical needs by "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed."[10] To state a claim for the failure to provide medical care, Mr. Houser must allege facts showing prison officials were deliberately indifferent to his serious medical needs.[11]

A Facility official is not "deliberately indifferent" for purposes of an Eighth Amendment claim "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[12] Deliberate indifference may take the form of the response by medical personnel to an incarcerated person's medical needs, or the intentional denial or delay of access to medical care, or intentional interference with treatment once prescribed.[13] Deliberate indifference is a subjective standard consistent with recklessness.[14] In inadequate medical care claims, our Court of Appeals finds deliberate indifference where objective evidence of a serious need for care is ignored and where "necessary medical treatment is delayed for non-medical reasons."[15]

Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner move to dismiss Mr. Houser's complaint arguing: (1) Eleventh Amendment immunity bars official capacity claims depriving us of subject matter jurisdiction; (2) the state actors sued in their official capacities are not "persons" for purposes of section 1983 claims; (3) the statute of limitations bars Mr. Houser's claims; (4) he did not allege the personal involvement of Superintendent Terra,

3

Deputy Superintendent Sipple, and Administrator Huner sufficient to maintain claims against them in their individual capacity; and (5) he does not allege facts supporting deliberate indifference sufficient to maintain an Eighth Amendment denial of medical care claim.[16]

We grant the Facility officials' motion with leave to allow Mr. Houser to amend his complaint as to the Facility officials' individual liability if he can do so in good faith consistent with this Memorandum.

### A. Eleventh Amendment immunity bars official capacity claims.

The Facility officials first argue we lack jurisdiction over claims asserted against them in their official capacity. We agree and dismiss claims against Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner in their official capacities for money damages as barred by the Eleventh Amendment.[17]

The Supreme Court interprets the Eleventh Amendment "to shield States and certain State-affiliated entities from suits for damages in federal court."[18] "There is no exception to Eleventh Amendment immunity for plaintiffs who bring state law claims against a state."[19] The immunity extends to state agencies like Pennsylvania's Department of Corrections and its officials acting in their official capacity as "against the State itself."[20] A state may waive its Eleventh Amendment immunity, but Pennsylvania's General Assembly did not waive its immunity for claims under section 1983.[21]

Mr. Houser's claims against Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner seeking money damages are barred by the Eleventh Amendment and are dismissed with prejudice.

### B. The Facility officials sued in their official capacity are not "persons" subject to the civil rights law.

To state a civil rights claim, Mr. Houser must allege a state actor deprived him of his Eighth Amendment rights. State agencies like Pennsylvania's Department of Corrections and Facility officials with the Department of Corrections acting in their official capacity are not "persons" capable of being sued for civil rights violations under section 1983.[22] We dismiss official capacity claims against Superintendent Terra, Deputy Superintendent Sipple with prejudice.

### C. The statute of limitations bars the claims as currently pleaded.

Pennsylvania's two-year statute of limitations for personal injury actions applies to Mr. Houser's civil rights claims.[23] But the period is tolled while an incarcerated person exhausts his administrative remedies.[24] Mr. Houser alleges he exhausted all administrative remedies under the Prison Litigation Reform Act but does not tell us which claims over the eighteen year period he exhausted or when he did so.[25]

The Facility officials argue Mr. Houser's injuries beginning in 2004 and on his arrival at SCI-Greene in 2006 are barred by the two-year statute of limitations. The Facility officials argue all claims which accrued before April 10, 2025—the date the Clerk's Office filed his complaint—are time-barred and are not tolled.

We agree, with a caveat: Mr. Houser mailed his complaint to the Court on April 7, 2025—not April 10, 2025—and we will use that date for the purposes of the two-year statute of limitations unless Mr. Houser alleges facts to support exhaustion of his administrative remedies under the Prison Litigation Reform Act tolling the two-year period. Mr. Houser does not allege conduct beginning April 7, 2023 within the statute of limitations. Nor does he allege facts bearing on tolling. We dismiss Mr. Houser's complaint with leave to amend his complaint to allege conduct

within the limitations period and facts on exhaustion to support tolling during the limitations period.

### D. Mr. Houser does not allege personal involvement of Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner.

Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner move to dismiss the claims against them in their individual capacities. They argue Mr. Houser fails to allege facts to support their personal involvement in the alleged constitutional harm. We agree and dismiss the claims asserted against Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner in their individual capacities for failure to allege their personal involvement but will allow Mr. Houser leave to amend if he can do so.

Mr. Houser must allege personal involvement to state a claim against the Facility officials in their individual capacities.[26] Facility officials may not be held liable under section 1983 based only on a *respondeat superior* theory of liability.[27] Facility officials may only be liable where the incarcerated person alleges facts to show personal involvement in the alleged misconduct, requiring particular "allegations of personal direction or of actual knowledge and acquiescence."[28]

Mr. Houser alleges Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner are liable for the deprivation of medical care during the entire period of his incarceration at SCI-Phoenix beginning in January 2020 because they "acquiesced" to the conduct of unpleaded Jane and John Doe Medical Directors as SCI-Greene and Dr. Letizio's conduct at SCI-Phoenix.[29] This broad conclusion does not state a claim against Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner. Mr. Houser does not allege personal involvement by Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner in the alleged denial of medical care at SCI-Greene—where none of these Facility Officials worked—which, by Mr. Houser's admissions, occurred before 2020. And Superintendent Terra, Deputy

Superintendent Sipple, and Administrator Huner cannot be liable simply because of the positions they hold; there must be some allegation they personally directed or had actual knowledge of the deprivation of medical care by Dr. Letizio or any Facility or medical official at SCI-Phoenix *and* acquiesced to it.

We dismiss Mr. Houser's claims against Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner for not alleging facts of their personal involvement. We allow Mr. Houser leave to amend to the extent he can state an Eighth Amendment claim against the Facility officials in their individual capacity.

### E. Mr. Houser does not plausibly allege constitutionally deficient denial of medical care.

Mr. Houser's claims seem to arise from his disagreement on his level of care, not from a denial of medical care for Eighth Amendment purposes. The Facility officials argue Mr. Houser received medical care and challenges only the adequacy of the care, which is not an Eighth Amendment violation, and there is a distinction between non-medical prison officials and medical personnel for deliberate indifference claims. We agree and dismiss the complaint against the Facility officials, allowing Mr. Houser to amend to plausibly allege constitutionally deficient deliberate indifference claims against Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner if he can do so.

The Eighth Amendment's prohibition on cruel and unusual punishment forbids the deliberate indifference to serious medical needs of incarcerated persons. Mr. Houser must allege (1) a serious medical need; (2) the Facility officials' deliberate indifference to his need; and (3) the deliberate indifference caused him harm.[30]

Mr. Houser cannot state an Eighth Amendment claim based solely on his level of care. There is a distinction "between cases where the complaint alleges a complete denial of medical

7

care and those alleging inadequate medical treatment."³¹ Disagreement as to the proper medical treatment does not support an Eighth Amendment claim.³² Medical care treatment is presumed proper absent evidence showing it violated professional standards of care.³³

Mr. Houser disagrees with the medical care he has received. For example, he complains Dr. Letizio reduced his medication without examining him and did not "properly" reduce his medication.³⁴ Mr. Houser alleges Dr. Letizio only met with him two or three times, but "gets other medical staff to do his dirty work," which suggests Mr. Houser is receiving medical care, just not from Dr. Letizio.³⁵ None of these allegations identify conduct by Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner. And disagreement with medical care or "mere receipt of inadequate medical care does not itself amount to deliberate indifference" because the state actor must also "act with the requisite state of mind when providing that inadequate care" to rise to an Eighth Amendment violation.³⁶ Mr. Houser did not allege facts Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner acted with deliberate indifference.

Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner are non-medical Facility officials. Our Court of Appeals instructs if an incarcerated person is under the care of medical experts, a non-medical Facility official "will generally be justified in believing" the incarcerated person "is in capable hands" which flows "naturally from the division of labor within a prison."³⁷ Our Court of Appeals in *Spruill* explained the division of labor for the health and safety of incarcerated persons is promoted by dividing responsibility among guards, administrators, physicians, and others.³⁸ Holding non-medical officials liable where an incarcerated person is under a physician's care "would strain this division of labor."³⁹ In this Circuit, then, non-medical Facility officials "will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference" without alleged facts to show "a reason to believe

(or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner."[40]

Nor may Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."[41] Mr. Houser alleges he "continues to actually beg for effective pain relief and his need for surgery" and an unidentified "Facility Manager and medical supervisors" must take "appropriate steps to provide adequate treatment and care for their patient instead of just blaming everything on the medical director/providers."[42] To the extent this has anything to do with Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner, they are not "deliberately indifferent" where Mr. Houser received medical treatment which he believes is inadequate.

We dismiss Mr. Houser's claim for the denial of medical care with leave to file an amended Complaint if he can plead a deliberate indifference claim against Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner consistent with this opinion.

### III. Conclusion

We grant Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner's motion to dismiss the official capacity claims with prejudice. We will allow Mr. Houser leave to amend his complaint to assert claims against Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner in their individual capacities if he can allege facts supporting their personal involvement in the deprivation of medical care and their actual knowledge the Facility's medical staff mistreated him or failed to treat him within the two-year statute of limitations.

---

[1] ECF 2 at 13 (using the pagination assigned by the CM/ECF docketing system).

[2] *Id.* at 13-14.

---

[3] *Id.* at 14.

[4] *Id.* at 14-15.

[5] Mr. Houser asserts his claims under 42 U.S.C. § 1983. Congress in section 1983 provides, in relevant part: "Every person who, under color of any statute … of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …." 42 U.S.C. § 1983.

[6] ECF 2 at 2-3. Dr. Letizio has not been served with the summons and complaint. The Commonwealth's Office of Attorney General accepted service only for Superintendent Terra, Deputy Superintendent Sipple, and Corrections Health Care Administrator Huner and Deputy Attorney General Jonathan Rava entered his appearance for them. ECFs 10, 11. With no waiver of service for Dr. Letizio, we ordered the Clerk of Court to send to Mr. Houser a copy of our Order and the U.S. Marshal Service of Process Receipt and Return Form USM-285 for service on Dr. Letizio. ECF 12. We ordered Mr. Houser to complete the USM-285 Form for Dr. Letizio and return it to the Clerk's Office by July 14, 2025 for service by the U.S. Marshal Service. *Id.* We address today only the Motion filed by the Commonwealth on behalf of Superintendent Terra, Deputy Superintendent Sipple, and Corrections Health Care Administrator Huner. ECF 13.

[7] ECF 2 at 15.

[8] *Id.* at 5 ¶ VI.

[9] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Schneyder v. Smith,* 653 F.3d 313, 319 (3d Cir. 2011).

[10] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).

[11] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

[12] *Id.* at 837.

[13] *Estelle*, 429 U.S. at 104.

[14] *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003)).

[15] *Id.*

[16] ECF 13. The state actors move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

10

A challenge to our subject matter jurisdiction is made under Rule 12(b)(1). The Eleventh Amendment is a jurisdictional bar depriving us of subject matter jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996). When considering a motion under Rule 12(b)(1), we first determine whether the Facility officials present a facial or factual attack to our subject matter jurisdiction. The Facility officials did not specify whether they are making a facial or factual attack, but we assume they are making a facial attack. A facial challenge attacks the complaint on its face without contesting the facts alleged and is like a Rule 12(b)(6) motion requiring us to consider all well-pleaded allegations in the complaint as true. *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 n.7 (3d Cir. 2024) (citations omitted).

Rule 12(b)(6) tests the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668). In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

We are "mindful of our obligation to liberally construe a pro se litigant's pleadings ... particularly where the pro se litigant is imprisoned." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (first quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); then citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)). We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it." *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). We are directed by our Court of Appeals this

liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); then citing *Higgs*, 655 F.3d at 339). But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules–they must abide by the same rules that apply to all other litigants." *Yogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

[17] The Eleventh Amendment "bar[s] all private suits against non-consenting States in federal court . . . with the goal of protecting 'the States' solvency and dignity.'" *Allen v. N.J. State Police*, 974 F.3d 497, 504 (3d Cir. 2020) (citations omitted).

[18] *Id.* at 505 (quoting *Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 654 (3d Cir. 2018)).

[19] *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

[20] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[21] 52 PA. CONS. STAT. ANN. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020).

[22] *Will*, 491 U.S. at 71; *Robinson v. Pa. Dep't of Corr.*, 851 F. App'x 289, 291 (3d Cir. 2021).

[23] *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 602 (3d Cir. 2015).

[24] *Id.* at 603-04.

[25] ECF 2 at 6, § VII.

[26] *Dooley*, 957 F.3d at 374 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[27] *Id.*

[28] *Id.*

[29] ECF 2 at 15.

[30] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023).

[31] *Pearson*, 850 F.3d at 535 (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

[32] *Id.* (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)).

[33] *Id.* (quoting *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)).

[34] ECF 2 at 13.

[35] *Id.* at 14.

[36] *Pearson*, 850 F.3d at 535 (citing *Dermer v. O'Carroll*, 991 F.2d 64, 69 n.13 (3d Cir. 1993)). We note Mr. Houser's allegation Dr. Letizio (not Superintendent Terra, Deputy Superintendent Sipple, or Administrator Huner) "refuse[d] to provide [Mr. Houser] with a wheelchair or some kind of walking device." ECF 2 at 13.

We remind Mr. Houser of his representations to us in another matter, *Houser v. U.M. Faubert*, No. 22-2730. There, Mr. Houser sued Unit Manager Todd Faubert and Corrections Counselor Joshua Wright under section 1983 alleging retaliation for exercising his First Amendment right to testify at a fairness hearing in another litigation then pending in the United States District Court for the Middle District of Pennsylvania. Mr. Houser alleged Manager Faubert and Counselor Wright denied him a job because a prescribed wheelchair restricted his job opportunities to sedentary work, which Mr. Houser believed the two officials used as a pretext to deny him the job he wanted in retaliation for his testimony. Mr. Houser did not dispute he asked a medical provider at SCI-Phoenix to remove the wheelchair restriction in March 2020, the Facility's medical provider agreed to remove the wheelchair requirement in April 2020, and updated Mr. Houser's medical record to remove the restriction in May 2020. *Id.* at ECF 72. Mr. Houser then alleged in his amended Complaint "the only time that [he] needed to use the wheelchair was when leaving the institution for Court." *Id.* at ECF 26 at 11-12.

Having made such judicial representations, Mr. Houser cannot turn around and allege in this action Dr. Letizio's denial of a wheelchair—a wheelchair he swore he did not need in another action before us—is an unconstitutional deprivation of medical care for which Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner are liable. Mr. Houser, at a minimum, needs to explain his shifting view on the availability of the wheelchair.

[37] *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Pearson*, 850 F.3d at 539 (citing *Dermer*, 991 F.2d at 69).

[42] ECF 2 at 15.