IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARIEN HOUSER** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **NO.  25-1875** |
| | **:** | |
| **ANTHONY LETIZIO,** | **:** | |
| **SUPERINTENDENT J. TERRA,** | **:** | |
| **JOSEPH WALSH, CHCA HUNER,** | **:** | |
| **DEPUTY SIPPLE, DEPUTY** | **:** | |
| **HENSLEY, JANE/JOHN DOE,** | **:** | |
| **JANE/JOHN DOE BUREAU OF** | **:** | |
| **HEALTH CARE SERVICES FINAL** | **:** | |
| **DECISION MAKERS** | **:** | |

## MEMORANDUM

**KEARNEY, J.**                                                                                  **February 27, 2026**

The incarcerated Darien Houser returns with his third round of allegations against his Facility's officials and medical professionals claiming they denied him medical care under the Eighth Amendment. We analyzed his varied allegations as to each official and medical professional. Mr. Houser may proceed into discovery on limited and administratively exhausted allegations against three Facility officials having now pleaded each official's personal involvement. He may also proceed on claims against his treating doctor but not the physician assistant.

### I.    Mr. Houser's evolving allegations.

The Commonwealth supervises the incarcerated Darien Houser at SCI-Phoenix since 2020 stemming from a 2004 arrest. He claims injuries to his leg and knee arising from his arrest. Mr. Houser bases his claim of constitutionally deficient medical care on an examination by orthopedic surgeon Dr. John Esterhai at the University of Pennsylvania in June 2004. Dr. Esterhai examined Mr. Houser on June 9, 2004 and noted "the severe nature of the damage that both his knee and his

ankle [sic] and the ***potential*** requirement in the future for extensive reconstructive type surgery."[1] Mr. Houser's theory is "Defendants" generally denied him surgery in the over twenty plus years since Dr. Esterhai's examination. At least one of his allegations appears to concede he received pain medication but "Defendants" generally did "absolutely . . . nothing" to "possibly discontinue his need for pain medication or lessen need for pain medication which could of [sic] been accomplished by providing surgery" Dr. Esterhai opined may "potential[ly]" be required.[2]

### *We dismissed Mr. Houser's first round of allegations in July 2025.*

Mr. Houser first sued SCI-Phoenix Superintendent Joseph Terra, Medical Director of SCI-Phoenix Anthony Letizio, DO, Deputy Superintendent Mandy Biser Sipple, and Corrections Health Care Administrator Britney Huner in their individual and official capacities on April 7, 2025, alleging they denied him medical care in violation of the Eighth Amendment.[3]

We granted the Commonwealth Defendants' motion to dismiss the Complaint finding the Eleventh Amendment barred the official capacity claims, the statute of limitations barred claims accruing before April 7, 2023, and Mr. Houser did not allege personal involvement by the Commonwealth Defendants required to state a claim against them or plausibly allege constitutionally deficient denial of medical care.[4] We granted Mr. Houser leave to amend his Complaint.

### *We allowed some but not all of Mr. Houser's second round of allegations.*

Mr. Houser returned with an amended Complaint asserting an Eighth Amendment denial of medical care claim against Superintendent Terra, Deputy Superintendent Sipple, Corrections Health Care Administrator Huner, Dr. Letizio, and adding as Defendants Deputy Superintendent Charles Hensley and Physician Assistant Joseph Walsh.[5] Mr. Houser continued to base his claims

on events from 2004 or unidentified time periods. He elected not to allege facts on exhaustion to support tolling of the statute of limitations.

We studied his amended allegations and identified the claims plausibly alleged in the amended Complaint as to each state actor:[6]

- Superintendent Terra is the Facility's "final decisionmaker" including the Facility grievance system and has personal knowledge of Mr. Houser's medical complaint, pain, need for medical devices and surgery "personally seen" Mr. Houser's legs, and discussed the need for surgery and "constant pain."[7]

- Health Care Administrator Huner oversees the Facility's medical department, responded to Mr. Houser's grievances, refused or failed to act on Mr. Houser's serious medical condition needing pain management, a wheelchair, and knee braces, and "personally addressed" Mr. Houser's need for pain management and medical equipment.[8]

- Deputy Sipple and Deputy Hensley are "in charge of" Facility management and medical department management and have both "seen and have personal knowledge" of Mr. Houser's "deformity," his constant pain, and need for surgery, leg braces, and a wheelchair ultimately given to him in July 2025.[9]

- Physician Assistant Walsh, at an unpleaded time, treated Mr. Houser during sick call assessments and denied him adequate, appropriate, and effective pain medication, and called Mr. Houser "a junkie" when refilling pain medication, and on one unidentified occasion refused to provide treatment and instead called correction officers to remove Mr. Houser from the medical area.[10]

- Dr. Letizio received Mr. Houser's medical records but denied him a wheelchair in late 2023. Mr. Houser concedes someone provided him a wheelchair in July 2025.[11]

We explained Mr. Houser's disagreement with medical care provided to him is not the same as a denial of medical care for an Eighth Amendment claim.[12] Broadly and liberally construing Mr. Houser's allegations, we concluded he stated an Eighth Amendment claim against Superintendent Terra, Health Care Administrator Huner, and Deputies Hensley and Sipple for the denial of necessary surgery and/or effective pain management, leg braces and other medical devices assuming the conduct occurred within the statute of limitations.[13] We concluded Mr.

3

Houser alleged Physician Assistant Walsh denied him constitutionally sufficient medical care assuming the conduct occurred within the statute of limitations.[14]

We dismissed claims against Dr. Letizio because Mr. Houser did not allege Dr. Letizio denied him medical care with deliberate indifference.[15] We allowed Mr. Houser to amend his Complaint one last time to allege constitutionally violative conduct against Dr. Letizio.[16] We dismissed broad allegations against "all Defendants" lumped together.[17]

### *We now review Mr. Houser's third round of allegations.*

Mr. Houser returned with a second amended Complaint which he identified as "basically for the purpose of pleading claims against defendant [Dr.] Letizio."[18] We consolidated Mr. Houser's claims in the amended Complaint and his second amended Complaint.[19]

Mr. Houser alleges in his second amended Complaint:

- Dr. Letizio "assessed" Mr. Houser only once through the "Doctor Line" and refused to "personally see or meet with [Mr. Houser] on numerous occasions in an attempt to receiv[e] effective pain relief, surgery, knee braces, ankle support, and an MRI.[20]

- Health Care Administrator Huner denied Mr. Houser shoes for ankle support and reconstructive surgery.[21]

- Dr. Letizio and Health Care Administrator Huner refused to meet with Mr. Houser in the triage area some time in late 2023 or early 2024 when a John Doe Physician Assistant or nurse asked them to attend to Mr. Houser.[22]

- Dr. Letizio, Physician Assistant Walsh, Superintendent Terra, Deputy Superintendents Sipple and Hensley, and Corrections Health Care Administrator Huner "have . . . done nothing . . . that may have possibly discontinue[d] [Mr. Houser's] need for pain medication or less[e]n his need for pain medication which could have been accomplished by providing surgery"; "did nothing" to stop or slow the progression of deformity in his legs; denied him a wheelchair in 2024 admittedly later provided to him; and denied him effective pain relief, diagnostic scans (MRI or CT scan), knee braces, consultation with an orthopedist and surgery.[23]

- Dr. Letizio in 2024 refused to "see or talk" to Mr. Houser while he waited in a medication line, commenting "keep filing grievances on me [Dr. Letizio], go on

and sue me" and "I do not have to see you [Mr. Houser] or talk to you as long as I [Dr. Letizio] give you pain medication, you are receiving treatment."[24]

Mr. Houser still did not cure the "all Defendants" allegations we explained did not plausibly state a claim against each individual state actor and continues to refer to "all Defendants mentioned in this complaint" as depriving him of medical care.[25]

### *Mr. Houser's new facts not alleged.*

Mr. Houser attempts to supplement allegations in his opposition to the motions to dismiss. He now alleges an October 2021 diagnostic study ordered by a Dr. Goldberg from Global Diagnostic Services of Mr. Houser's right knee and left ankle recommended "[i]f the patient has persistent pain or a radiographically occult fracture is clinically suspected, a follow-up radiographic evaluation in 10-14 days, MRI, or CT scan could be considered."[26] Mr. Houser now claims in his opposition brief a follow-up diagnostic study did not occur until January 2026 "due to the filing of this lawsuit."[27] Mr. Houser does not allege who denied him a follow-up diagnostic study within the limitations period.

He also now alleges the new medical director at SCI-Phoenix, Dr. Patton, examined him on January 22, 2026 and ordered knee braces, "agreed" to the need for surgery, and agreed to an orthopedic consultation.[28] Mr. Houser alleges Dr. Patton also approved the purchase of an electric beard and mustache trimmer because of bumps on his skin but Deputy Hensley yelled at Mr. Houser, disagreeing Dr. Patton had the authority to approve of an electric beard and mustache trimmer.[29] Mr. Houser alleges unidentified persons failed to provide him with "anything" approved by Dr. Patton.[30]

Mr. Houser does not identify the relief he seeks in his amended Complaint.[31] Mr. Houser seeks injunctive relief in his second amended Complaint ordering SCI-Phoenix's medical

department "to expedite the necessary procedures in order for [Mr. Houser] to receive surgery."[32] There are no requests for money damages in the operative complaints.

## II. Analysis

The Commonwealth Defendants and Dr. Letizio and Physician Assistant Walsh move to dismiss Mr. Houser's third round of consolidated claims.[33] Both the Commonwealth Defendants and Dr. Letizio and Physician Assistant Walsh argue (1) the statute of limitations bars Mr. Houser's consolidated claims; and (2) claims not statutorily barred do not allege deliberate indifference to his medical needs required to state an Eighth Amendment claim.

The Commonwealth Defendants offer two additional arguments: (1) Mr. Houser's consolidated claims are procedurally defaulted because he did not exhaust his administrative remedies; and (2) he does not allege personal involvement of the individual Defendants to hold them liable in their individual capacities.

Mr. Houser opposed the Motions, generally rehashing (and adding to) his complaints around the denial of medical care and arguing we should allow his claims to go forward into discovery which he believes will show the denial of medical care.[34]

We allow certain claims to proceed but others are now dismissed with prejudice after three attempts to plead claims.

### A. The statute of limitations bars claims before April 7, 2023.

Both the Commonwealth Defendants and Dr. Letizio and Physician Assistant Walsh raise the statute of limitations as a defense to Mr. Houser's consolidated claims. We already explained to Mr. Houser the statute of limitations bars claims before April 7, 2023, two years before the date he put his Complaint in the United States Mail on April 7, 2025.[35] We also gave Mr. Houser a

chance to amend his Complaint to allege conduct within the limitations period and facts on exhaustion to support tolling during the limitations period.[36]

Mr. Houser's consolidated claims and opposition to the Motions to dismiss continue to refer to events and attach documents outside the statute of limitations. As we already determined, alleged denial of medical care based on events occurring before April 7, 2023 are barred by the statute of limitations. Mr. Houser alleges he "does not like to state dates with claims against defendants in this case because he wish not [sic] to proffer false dates with claims and incidents, but [he] will inform this court that although [he] pleads continuing violations for some defendants . . . [he] can assure this court that all claims mentioned in the amend[ed] complaint and second amend[ed] complaint occurred within the statute of limitations and continue as to date."[37] In the same allegations, he also alleges his claims occurred after he left the Restricted Housing Unit at SCI-Phoenix in March 2023.[38]

Mr. Houser's claims in this action are confined to the period of April 7, 2023 to April 7, 2025. We dismiss all claims based on events outside this window. [39]

### B. Specific identified grievances will go forward as the record does not confirm a failure to exhaust.

Defining the window of the alleged constitutionally deficient denial of medical care, we turn to the issue of administrative exhaustion. The Commonwealth Defendants moved to dismiss Mr. Houser's consolidated claims arguing he failed to exhaust his administrative remedies consistent with the Department of Corrections' three-tier procedure under its Official Inmate Grievance System at Administrative Directive 804.

The Commonwealth Defendants' Motion identifies nine grievances at issue: Grievance Nos. 1052304, 1073356, 1073357, 1108285, 1120928, 1108854, 1124605, 1126487, 1148451.[40] Mr. Houser attached four other grievances, or portions of grievances, to his opposition brief the

Commonwealth Defendants did not identify: Grievance Nos. 1055637, 1057518, 1115068, 1109114.[41]

Congress, through the Prison Litigation Reform Act, requires incarcerated persons to exhaust all available remedies before filing suit in federal court.[42] Congress prohibits incarcerated persons from bringing actions alleging unconstitutional conduct by facility officials until administrative remedies as are available are exhausted.[43] Incarcerated persons must "exhaust administrative remedies even where relief sought—monetary damages—cannot be granted by the administrative process."[44] Congress requires proper exhaustion, which "demands compliance with an agency's deadlines and other critical procedural rules."[45] The correctional facility sets the steps required for compliance with grievance procedures.

Incarcerated persons are not required to plead and prove exhaustion in their complaint; failure to exhaust is an affirmative defense the defendant must plead and prove.[46] We are bound by the Prison Litigation Reform Act; claims not properly exhausted under the Act are procedurally defaulted.[47] When a defendant moves to dismiss a claim based on a failure-to-exhaust defense and exhaustion "turns on indisputably authentic documents related to [the incarcerated person's] grievances, . . . we may also consider these documents without converting a motion to dismiss to a motion for summary judgment."[48]

The Pennsylvania Department of Corrections has an Official Inmate Grievance System governed by Administrative Directive 804. The Directive creates a three-step Inmate Grievance System: (1) the incarcerated person must submit a grievance to the Facility Grievance Coordinator containing the relevant facts, individuals involved, claims alleged, and relief sought including money damages, which is then reviewed by a Grievance Officer (a different official) who submits an initial response; (2) the incarcerated person may appeal the initial response to the Facility

Manager who reviews it and issues a decision; and (3) the incarcerated person may appeal to the Secretary of Corrections' Office of Inmate Grievance and Appeals ("SOIGA") for final review.[49]

In addition to the three-step procedure, the Commonwealth's Administrative Directive 804 Section 1.A. requires an incarcerated person include in his grievance "compensation or other legal relief normally available from a court" which must be requested in "the specific relief sought in his/her initial grievance"[50] So, an incarcerated person seeking monetary relief must include this request in the grievance.[51] A specific dollar amount is not required but the initial grievance "must make a clear request for compensation."[52] Section 1.A. of the Directive also requires an incarcerated person to "identify individuals directly involved in the event(s)."[53]

### 1. Grievances identified by the Commonwealth Defendants are unexhausted and procedurally defaulted.

Commonwealth Defendants identify nine grievances they contend are administratively deficient for a variety of reasons. Mr. Houser does not directly respond to the arguments raised by the Commonwealth Defendants regarding exhaustion. We conclude Grievance Nos. 1052304, 1073356, 1073357, 1108285, 1120928, 1108854, 1124605, 1126487, and 1148451 are unexhausted.

Grievance Nos. 1124605 and 1108285:[54] The Commonwealth Defendants move to dismiss these grievances as unexhausted because neither Grievance identifies a Commonwealth Defendant. The Grievances refer to Dr. Letizio, unidentified "medical staff," Jane and John Doe physician assistants, and the "Department of Correction 'Bearua' (which we interpret as "Bureau") of Healthcare. Neither grievance identifies a Commonwealth Defendant as required by Administrative Directive 804 section 1.A.11.b. and are procedurally defaulted.[55]

Grievance Nos. 1052304, 1073356, 1073357, 1120928:[56] The Commonwealth Defendants move to dismiss these grievances for failing to request money damages.[57]

9

The relief sought in Grievance No. 1052304 is to "be provided effective pain med [sic] until I receive reconstructive surgery/be provided the surgery I've been actually begging for."[58] The initial grievance did not seek money damages, but Mr. Houser "reserve[d] [his] right to seek monetary damages" in his Appeal to the Facility Manager.[59]

The relief sought in Grievance Nos. 1073356 and 1073357, filed on the same day, is "[f]or T4 to be discontinued and placed on paid med [sic] that provides relief for nerve damage and pain (chronic pain). Also reconstructive surgery that's needed" and "[t]o be placed on some other pain med[sic] and to discontinue T4, also to receive the reconstructive surgery that is needed. I request assistance to receive pain meds [sic], and to be seen by medical from Ms. Hydro (Unit Psych) and Ms. Danaker (Unit CC)."[60] Neither initial grievance sought money damages, but Mr. Houser's appeals to the Facility Manager noted "Amended Relief for monetary damages."[61]

The relief sought in Grievance No. 1120928 is "to be provided pain meds[sic] and provided surgery, given my leg braces are back [sic], and a wheelchair to use to go to meds, visit, long distance."[62] The initial grievance did not seek money damages, but Mr. Houser amended his requested relief to "seek monetary damages, adequate pain relief until surgery provided [and] MRI on legs [and] moved to EB block."[63]

Mr. Houser's omissions of requests for monetary damages in his *initial* grievances results in unexhausted claims. Under Department of Corrections' policy at ADM 804 Section 1.A.11.d., an incarcerated person "must request the specific relief sought in his/her initial grievance."[64] Although Mr. Houser included a monetary demand in his appeals to the Facility Manager his initial grievances did not, contrary to the language of ADM 804 requiring compensation or other legal relief to be included in the *initial grievance*.

10

Judge Leeson recently confronted similar facts. Incarcerated Mr. Wright sued his facility officials for failure to protect and excessive force.[65] The facility officials moved for summary judgment arguing Mr. Wright failed to properly exhaust his administrative remedies by failing to request monetary relief in his initial grievance. Mr. Wright countered he made a claim for monetary relief in his final grievance appeal.

Judge Leeson surveyed authority in our Circuit, finding cases meeting the exhaustion requirement of ADM 804 where the *initial* grievance requested either a dollar amount or "money" or "monetary" damages with no specific amount identified.[66] Judge Leeson identified cases where incarcerated persons seeking monetary relief did ***not*** meet the exhaustion requirement when their *initial* grievance sought no relief, or "whatever relief may be available," or some other non-monetary relief.[67]

Judge Leeson reasoned Mr. Wright's grievance would satisfy the exhaustion requirement if the grievance made the facility officials aware of his claims and desire for monetary compensation, but Mr. Wright's language in the grievance "I want each employee involved to hand over their bond for liquidation purposes" did ***not*** put the facility officials on notice of a claim for money damages.[68] Judge Leeson also rejected Mr. Wright's argument his request for monetary damages in his final appeal of his grievance is sufficient, concluding the monetary demand in the final appeal does not comply with ADM 804 requiring relief must be made in the *initial* grievance.[69]

We agree with Judge Leeson's comprehensive reasoning and find the initial grievances at Nos. 1052304, 1073356, 1073357, and 1120928 do not meet the exhaustion requirement. We dismiss claims for monetary damages (to the extent pleaded in the operative consolidated claims) relating to these grievances.

11

Grievance Nos. 1108854, 1126487, 1148451: The Commonwealth Defendants argue these grievances are not exhausted because the final appeal decision for Grievance No. 1126487 did not conclude until May 26, 2025, two months after Mr. Houser's original Complaint; Mr. Houser did not appeal the final decision in Grievance No. 1148451 until May 26, 2025, two months after the original Complaint; and the final appeal decision for Grievance No. 1108854 did not conclude until July 24, 2025, four months after Mr. Houser's original complaint.[70]

An incarcerated person does not exhaust his administrative remedies before filing a complaint until his grievance is denied at all levels of the process.[71] The grievance documents attached to the parties' filings confirm Mr. Houser did not fully exhaust his grievances at Nos. 1108854, 1126487, and 1148451 when he filed this case on April 7, 2025. We dismiss all claims based on these grievances.

**2. Grievances identified by Mr. Houser will go forward on the exhaustion issue based on the incomplete record before us and the Commonwealth Defendants' failure to address these Grievances.**

Mr. Houser's opposition to the Motions to dismiss attaches four grievances the Commonwealth Defendants do not identify: Grievance Nos. 1055637, 1057518, 1115068, and 1109114.[72]

The initial Grievance No. 1055637 is dated October 8, 2023, within the statutory period. The copy attached to Mr. Houser's opposition brief is unreadable, so we are unable to determine whether Grievance No. 1055637 requests monetary damages or identifies the Commonwealth Defendants. We also do not have a document beyond the initial review response.

We do not have all documentation for Grievance Nos. 1057518, 1055637, 1115068, and 1109114 to determine exhaustion. Exhaustion is an affirmative defense with the burden on the Commonwealth Defendants to plead and prove the defense. The Commonwealth Defendants have

not done so as to the Grievances identified by Mr. Houser. Claims based on these grievances will go forward into discovery without prejudice to the Commonwealth Defendants to later raise exhaustion if there is a fact basis for the defense.

### C. Mr. Houser may proceed into discovery on limited Eighth Amendment denial of medical care claims against Facility officials and Dr. Letizio.

Dr. Letizio and Physician Assistant Walsh move to dismiss the consolidated claims, arguing Mr. Houser failed to allege deliberate indifference. The Commonwealth Defendants also move to dismiss the consolidated claims for failing to allege their lack of personal involvement and deliberate indifference. Mr. Houser did not respond to these arguments.

We first address the lack of personal involvement of the Commonwealth Defendants and then address the allegations of deliberate indifference.

### 1. We will allow specifically identified allegations forming the basis of an Eighth Amendment denial of medical care claim to proceed against Commonwealth Defendants based on plausible allegations of personal involvement as we earlier determined.

We twice explained to Mr. Houser he must allege personal involvement of each of the Commonwealth Defendants—Superintendent Terra, Deputy Superintendent Sipple, the yet-unserved Deputy Hensley, and Health Administrator Huner.[73] We earlier explained to Mr. Houser he must allege personal involvement to state a claim against the Commonwealth Defendants in their individual capacities.[74] The Commonwealth Defendants may not be held liable under section 1983 based only on a respondeat superior theory of liability.[75] Superintendent Terra, Deputy Superintendent Sipple, Deputy Hensley, and Administrator Huner may only be liable if Mr. Houser alleges facts to show personal involvement in the alleged misconduct. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[76]

"Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity."[77]

We already found certain specific allegations may go forward:[78]

- Superintendent Terra is the Facility's "final decisionmaker" including the Facility grievance system and has personal knowledge of Mr. Houser's medical complaint, pain, need for medical devices and surgery, "personally seen" Mr. Houser's legs, and discussed the need for surgery and "constant pain."[79]

- Health Care Administrator Huner oversees the Facility's medical department, responded to Mr. Houser's grievances, refused or failed to act on Mr. Houser's serious medical condition needing pain management, a wheelchair, and knee braces, and "personally addressed" Mr. Houser's need for pain management and medical equipment.[80]

- Deputy Sipple and Deputy Hensley are "in charge of" Facility management and medical department management and have both "seen and have personal knowledge" of Mr. Houser's "deformity," his constant pain, and need for surgery, leg braces, and need for a wheelchair ultimately given to him in July 2025.[81]

Mr. Houser now adds two more allegations against Health Administrator Huner: she denied Mr. Houser "shoes for ankle support [and] reconstructive surgery" and refused, although scheduled to meet with Mr. Houser and Dr. Letizio, to meet with Mr. Houser regarding his medical concerns.[82] Liberally construing Mr. Houser's pro se allegations, we will allow claims based on these two allegations, in addition to the allegations we earlier identified, to go forward.

Mr. Houser's allegations Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner failed to "aid, assist or provide adequate medical care or even adequate imaging testing despite" the 2004 letter from Dr. Esterhai does not allege with particularity participation in or actual knowledge or acquiescence in the allegedly constitutionally deficient conduct.[83] We dismiss claims based on these deficient allegations.

The Commonwealth Defendants may have an argument—after we have a fulsome record— Mr. Houser did not exhaust administrative remedies for the identified specific claims: paragraphs

4, 5, and 6 of the amended Complaint (ECF 28) and paragraphs 3 and 4 of the second amended Complaint (ECF 34). The Commonwealth Defendants may also have an argument the record does not show their personal involvement in the specific paragraphs we identified in this Memorandum. The Commonwealth Defendants may move for summary judgment if borne by the facts of a developed record.

### 2. Mr. Houser plausibly alleges deliberate indifference by the Commonwealth Defendants limited to identified paragraphs.

The Commonwealth Defendants and Dr. Letizio and Physician Assistant Walsh both move to dismiss the consolidated claims for failing to allege facts to support deliberate indifference. The Eighth Amendment forbids state actors' deliberate indifference to serious medical needs of incarcerated persons. Mr. Houser must allege (1) a serious medical need; (2) Defendants' deliberate indifference to his need; and (3) the deliberate indifference caused him harm.[84]

We already determined, from a fair inference of Mr. Houser's second round of allegations, Superintendent Terra, Health Care Administrator Huner, and Deputies Hensley and Sipple knew— through either discussions with Mr. Houser or actually witnessing his legs—he needed surgery and pain management. Although not explicitly alleged, we can plausibly infer Superintendent Terra, Health Care Administrator Huner, and Deputies Hensley and Sipple denied Mr. Houser necessary surgery or effective pain management and leg braces and other medical devices. We now have Mr. Houser's third round of allegations with two allegations regarding Health Administrator Huner. We conclude the two allegations plausibly state a claim for deliberate indifference against Health Administrator Huner.[85]

### 3. Mr. Houser plausibly alleges deliberate indifference by Dr. Letizio but not by Physician Assistant Walsh.

Mr. Houser claims Dr. Letizio and Physician Assistant Walsh denied him constitutionally sufficient medical care. We allow him to proceed on the claim against Dr. Letizio but not on the claim against Physician Assistant Walsh.

### a.  We dismiss claims against Physician Assistant Walsh.

When we screened Mr. Houser's amended Complaint, we construed his allegations against Physician Assistant Walsh as a denial of pain medication at an unidentified time and a refusal of care at another unidentified time. We explained to Mr. Houser we did not know when these events occurred and found Mr. Houser stated a claim against Physician Assistant Walsh assuming the alleged conduct occurred after April 7, 2023.

We allowed Mr. Houser to again amend his Complaint to state a claim against Physician Assistant Walsh within the statutory period. We reviewed Mr. Houser's third round of allegations and see no allegations Physician Assistant Walsh denied him pain medication or refused him care within the statutory period. We reviewed all the grievances we currently have in the record. We see nothing in an initial grievance regarding conduct by Physician Assistant Walsh other than an allegation Physician Assistant Walsh "is very disrespectful."[86] Mr. Houser elected not to allege in his second amended Complaint plausible allegations of deliberate indifference to his medical needs by Physician Assistant Walsh. We dismiss claims against Physician Assistant Walsh.

### b.  We allow Mr. Houser to proceed on pleaded claims against Dr. Letizio.

Mr. Houser alleges his claims against Dr. Letizio occurred after his removal from the Restricted Housing Unit at SCI-Phoenix in March 2023. Liberally construing Mr. Houser's allegations as we must at the motion to dismiss stage, we fairly infer his claims against Dr. Letizio to be within the statutory period.

16

Mr. Houser alleges Dr. Letizio did not properly consider his medical status, specifically his need for reconstructive surgery, did not provide care to Mr. Houser except on one occasion, and denied Mr. Houser ankle supports, surgery, knee braces, effective pain management, and diagnostic tests.[87] We liberally construe these allegations to plausibly state a claim for the denial of medical care in violation of the Eighth Amendment. This is corroborated by at least one grievance submitted by Mr. Houser on October 18, 2023 complaining Dr. Letizio refused to "see [him]" for pain management.[88] At this preliminary stage, we allow claims against Dr. Letizio to go forward. Dr. Letizio may move for summary judgment after developing a fulsome record, including the pertinent medical records.

## III.  Conclusion

We grant in part and deny in part the Motions to dismiss.

We dismiss all claims based on Grievance Nos. 1052304, 1073356, 1073357, 1108285, 1120928, 1108854, 1124605, 1126487, and 1148451 as unexhausted.

We will allow claims based on the conduct identified in Grievance Nos. 1055637, 1057518, 1115068, and 1109114 to go forward pending review on a fulsome record.

We will allow claims against Superintendent Terra, Deputy Superintendent Sipple, and Administrator Huner limited to paragraphs 4, 5, and 6 of the amended Complaint (ECF 28) and paragraphs 3 and 4 of the second amended Complaint (ECF 34) **only**:

- Superintendent Terra: Personal knowledge of Mr. Houser's medical complaint, pain, need for medical devices and surgery, "personally seen" Mr. Houser's legs, and discussed the need for surgery and "constant pain"[89]

- Health Care Administrator Huner: Refused or failed to act on Mr. Houser's serious medical condition needing pain management, a wheelchair, and knee braces, and "personally addressed" Mr. Houser's need for pain management and medical equipment.[90] Refused Mr. Houser shoes for ankle support and reconstructive surgery.[91] Refused to meet with Mr. Houser regarding medical care in later 2023/early 2024.[92]

17

- • <u>Deputy Sipple</u>: "[Has] personal knowledge" of Mr. Houser's "deformity," his constant pain, and need for surgery, leg braces, and need for a wheelchair ultimately given to him in July 2025.[93]

We allow the pleaded deliberate indifference claims against Dr. Letizio. We dismiss all claims against Physician Assistant Walsh.

---

[1] ECF 28 at 19 (emphasis added) (using the pagination assigned by the CM/ECF docketing system).

[2] ECF 34, ¶ 5.

[3] ECF 2.

[4] ECF 14, 15. At the time of our memorandum and order on July 10, 2025, Dr. Letizio had not been served with the summons and complaint. Dr. Letizio waived service on July 23, 2025. ECF 20.

[5] ECF 28.

[6] ECF 30.

[7] *Id.* at 2, n. 3 (citing ECF 28 ¶ 4).

[8] *Id.* at 2, n. 4 (citing ECF 28 ¶ 5).

[9] *Id.* at 2, n. 5 (citing  ECF 28 ¶ 6).

[10] *Id.* at 2, n. 6 (citing ECF 28 ¶ 7).

[11] *Id.* at 2, n. 7 (ECF 28 ¶ 10).

[12] ECF 30 at 5.

[13] *Id.* at 6–7.

[14] *Id.*

[15] *Id.*

[16] ECF 30, 31.

[17] *Id.*

[18] ECF 34 at 1, ¶ 1.

[19] ECF 38.

[20] ECF 34 ¶ 3.

[21] *Id.* Mr. Houser also alleges Dr. Letizio and Health Care Administrator Huner denied him a beard and mustache trimmer. *Id.* Mr. Houser does not allege how the denial of a beard and mustache trimmer constitutes deliberate indifference to his serious medical needs. We dismiss an Eighth Amendment claim based on the denial of a beard and mustache trimmer to the extent Mr. Houser intended it to serve as a basis for his claim.

[22] *Id.* ¶ 4.

[23] *Id.* ¶ 5.

[24] *Id.* ¶ 7.

[25] *See, e.g.*, *id.* ¶ 5 ("Defendants have absolutely done nothing for Plaintiff that may have possibly discontinue[d] his need for pain medication or less[e]n his need for pain medication which could of been [sic] accomplished by providing surgery. These same defendant did nothing to stop or slow down the deformity of his legs . . .) and "said defendants" [did not provide a wheelchair] until after Mr. Houser filed his complaint);*id.* ¶ 6 ("All defendants mentioned in this complaint knew or should have known of the outstanding amount of grievances and complaints filed against defendant Letizio").

[26] ECF 46 at 40 (using the pagination assigned by the CM/ECF docketing system).

[27] *Id.* at 4, ¶ 5. Mr. Houser earlier alleged "Defendants" delayed medical care and adequate treatment by denying him reconstructive surgery by ignoring the recommendations made by an unidentified provider at Global Diagnostic Services at an unidentified time. ECF 28 at ¶ 3. His second amended Complaint concedes he received in January 2026 the diagnostic study recommended by the provider at Global Diagnostic Services.

[28] ECF 46 at 5–6, ¶ 9.

[29] *Id.* at 6.

[30] *Id.*

[31] ECF 28.

[32] ECF 34. We see no request for monetary damages in either the amended Complaint or second amended Complaint as consolidated by our Order. ECF 38. Mr. Houser's initial Complaint from April 2025 seeks $250,000 in punitive damages along with injunctive relief ordering surgery. ECF 2 at 5, § VI.

[33] ECF 40, 41. Counsel for Commonwealth Defendants did not move to dismiss on behalf of Deputy Superintendent Hensley because he had not been served with either the amended Complaint or second amended Complaint as of January 6, 2026 (the date they filed their motion).

[34] ECF 46.

[35] ECF 14, 30.

[36] ECF 30 at 5.

[37] ECF 34 at 1, ¶ 1.

[38] *Id.*

[39] Mr. Houser attached to his opposition to the Motions to dismiss documents and grievances dated after his April 7, 2025 Complaint. ECF 46. Mr. Houser may not base his claims on events after filing his Complaint because he must exhaust his administrative remedies before bringing his civil rights claims, not while his civil action is pending. *Millbrook v. United States*, 8 F. Supp. 3d 601, 611 (M.D. Pa. 2014).

[40] ECF 41 at 8–10.

[41] ECF 46.

[42] 42 U.S.C. § 1997e(a).

[43] *Oliver v. Wetzel*, 861 F. App'x 509, 516 (3d Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 84 (2006)).

[44] *Woodford*, 548 U.S. at 85.

[45] *Id.* at 90.

[46] *Perttu v. Richards*, 605 U.S. 460, 469–70 (2025).

[47] *Woodford*, 548 U.S. at 92–93.

[48] *Helms v. Superintendent Sorber*, No. 24-6928, 2026 WL 358286, at *7 (E.D. Pa. Feb. 9, 2026) (quoting *Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018)).

[49] *Prater v. Dep't of Corr.*, 76 F.4th 184, 203–04 (3d Cir. 2023).

[50] DC-ADM 804, Section 1.A.11.d.

[51] *Wright v. Fedder*, No. 23-5099, 2025 WL 2825588, at *5  (E.D. Pa. Oct. 3, 2025) (quoting *Stanley v. Little*, No. 23-4571, 2024 WL 3678987, at *5 (E.D. Pa. Aug. 6, 2024)).

[52] *Id.*

[53] DCM-ADM 804, Section 1.A.11.b. ("The [incarcerated] person shall identify individuals directly involved in the event(s)."

[54] ECF 42-1 at 5–6, 13 (using the pagination assigned by the CM/ECF docketing system).

[55] *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004).

[56] ECF 42-1 at 15, 17, 19, 21.

[57] As earlier noted, the consolidated claims in the amended Complaint and second amended Complaint do not seek monetary damages. We construe the Commonwealth Defendants' argument to be even if and to the extent Mr. Houser seeks money damages, such relief is barred for failing to request money damages in the Grievances.

[58] ECF 42-1 at 21.

[59] ECF 46 at 57 (using the pagination assigned by the CM/ECF docketing system).

[60] ECF 42-1 at 15, 17. "T4" is Tylenol with codeine and acetaminophen. https://www.mayoclinic.org/drugs-supplements/acetaminophen-and-codeine-oral-route/description/drg-20074117 [https://perma.cc/8ELE-6DQZ].

[61] ECF 34 at 4; ECF 35 at 2.

[62] ECF 42-1 at 19.

[63] ECF 35 at 3.

[64] ADM 804, Section 1.A.11.d.

[65] *Wright*, 2025 WL 2825588.

[66] *Id.* at *6 (collecting cases).

[67] *Id.* (collecting cases).

[68] *Id.* at *7.

21

[69] *Id.* (citing *Rasheed v. Saez*, No. 20-154, 2022 WL 14068766, at *5 (M.D. Pa. Oct. 24, 2022)) ("[P]laintiff asserts that he did request $1.5 million in his grievance. However, Plaintiff cites to his appeal of the initial grievance decision filed on a form DC-135A. As Plaintiff failed to request monetary damages in his ***initial*** grievance, he may not pursue such damages now in his federal complaint.") (emphasis added) (internal citations omitted)).

[70] ECF 28 at 12, ECF 35 at 5, ECF 46 at 47.

[71] *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir 2006) (an incarcerated person "must exhaust all available administrative remedies prior to filing suit"); *Newton v. Garza*, No. 25-907, 2025 WL 2045734, at *1 (M.D. Pa. July 21, 2025) (an incarcerated person "is not deemed to have exhausted his administrative remedies until his complaint has been pursued at all levels"); *Cabot v. Fed. Bureau of Prisons*, No. 17-710, 2018 WL 4291747, at *5 (M.D. Pa. Sep. 7, 2018) (an incarcerated person "has not exhausted his administrative remedies until the complaint has been denied at all levels of the process prior to filing suit."); *Johnson v. Dep't of Corr.*, No. 14-896, 2016 WL 1135501, at *6 (M.D. Pa. Mar. 3, 2016) (an incarcerated person must exhaust all available administrative remedies before filing a lawsuit); *Millbrook*, 8 F. Supp. 3d at 611 ("[E]xhaustion must occur prior to filing suit, not while suit is pending").

[72] ECF 46 at 12, 44–45, 50–54, 60–63, 80.

[73] ECF 14, 30 at n.29.

[74] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[75] *Id.*; 42 U.S.C. § 1983.

[76] *Rode*, 845 F.2d at 1207.

[77] *Id.*

[78] *See* ECF 30.

[79] *Id.* at 2, n. 3 (citing ECF 28 ¶ 4).

[80] *Id.* at 2, n. 4 (citing ECF 28 ¶ 5).

[81] *Id.* at 2, n. 5 (citing  ECF 28 ¶ 6).

[82] ECF 34 ¶¶ 3, 4.

[83] *Id.* at ¶ 2.

[84] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023).

[85] As identified in the preceding section, we will allow Mr. Houser's denial of medical care claim to proceed against the Commonwealth Defendants based on the allegations in paragraphs 4, 5, and 6 of the amended Complaint (ECF 28) and paragraphs 3 and 4 of the second amended Complaint (ECF 34) only. All other claims are dismissed.

[86] ECF 42–1 at 21. The complaint regarding Physician Assistant Walsh's disrespectful conduct appears in Grievance No. 1052304 which we already determined is unexhausted because the initial grievance did not seek monetary damages.

[87] ECF 34.

[88] ECF 46 at 50. As noted above, this is one of the grievances included in Mr. Houser's response brief but not addressed by the Commonwealth Defendants or Dr. Letizio.

[89] ECF 28 ¶ 4.

[90] *Id.* ¶ 5.

[91] ECF 34 ¶ 3.

[92] *Id.* ¶ 4.

[93] *Id.* ¶ 6.