**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARIEN HOUSER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-1875** |
| | : | |
| **SUPT. J. TERRA, ANTHONY LETIZIO, DEPUTY SIPPLE, CHCA HUNER, DEPUTY HENSLEY** | : | |

# MEMORANDUM

**KEARNEY, J.** **October 30, 2026**

A physician allegedly told an incarcerated man approximately twenty-two years ago of a potential need for surgery arising from an injury he suffered in connection with his arrest and conviction. The man began demanding surgery and increased attention to pain management in 2020 after transfer to a correctional facility in this District. He filed several grievances claiming the facility's medical director would not arrange the demanded surgery. The medical director disagreed finding the facility's medical staff properly applied a pain management protocol without the need for surgery. The man grieved the medical director's decision four times. The Commonwealth officers at the facility denied his four grievances relying upon medical opinions.

The man eventually sued the facility's former medical director and several Commonwealth officials asking us to order them to direct or perform the surgery based on the twenty-two-year-old diagnosis of a potential need for surgery. We allowed him to proceed beyond a motion to dismiss.

The facility's former medical director and the Commonwealth officials now move for summary judgment. We find no genuine issue of material fact precluding the entry of summary judgment in favor of the Commonwealth's facility officials because the incarcerated man did not first grieve his claim of demanding surgery against them. We further find we cannot compel the

former medical director to perform surgery when he left the facility before this incarcerated man sued him. We must, absent a genuine issue of material fact as to exhaustion of remedies or the former medical director's ability to provide the only requested relief, grant summary judgment and dismiss the incarcerated man's claim for immediate surgery.

## I. Undisputed material facts[1]

Philadelphia police arrested Darien Houser in March 2004. Mr. Houser suffered injuries to his leg and knee after jumping from a three-story window while attempting to escape from the police. Mr. Houser also suffered a gunshot wound.

Medical professionals at the Hospital of the University of Pennsylvania treated Mr. Houser's injuries in March 2004. Mr. Houser underwent several surgeries at the hospital. Orthopedic surgeon Dr. John Esterhai at the University of Pennsylvania examined Mr. Houser during a follow-up appointment on June 9, 2004.[2] Dr. Esterhai noted "the severe nature of the damage that both his knee and his ankle [sic] and the potential requirement in the future for extensive reconstructive type surgery."[3]

### *Mr. Houser's transfer and care at SCI-Phoenix.*

The Commonwealth transferred custody of Mr. Houser to SCI-Phoenix in 2020. Anthony Letizio, D.O., started working as the Medical Director at SCI-Phoenix at the end of 2021.[4]

### *Mr. Houser's October 2023 Grievance No. 1055637 against Dr. Letizio.*

Mr. Houser submitted Grievance No. 1055637 on October 8, 2023 to Facility Grievance Coordinator Orlando.[5] Mr. Houser explained he was in immense pain.[6] Mr. Houser requested to see only Dr. Letizio for a physical examination.[7] He requested relief in the form of surgery, effective pain medication, and the return of his leg braces and a "wedge" he used for his legs and acid reflux.[8] Mr. Houser named only Dr. Letizio in his grievance.[9]

Facility Grievance Coordinator Owens denied Mr. Houser's request for relief in Grievance No. 1055637.[10] Grievance Coordinator Owens explained Mr. Houser received Tylenol #4 three times a day.[11] Mr. Houser took his medication as prescribed eighty-nine percent of the time.[12] Grievance Coordinator Owens explained to Mr. Houser he needed to take the medication as ordered three times a day to reduce his pain.[13] Grievance Coordinator Owens spoke with Medical Director Dr. Letizio who did not approve an increase in narcotic pain medication.[14] Grievance Coordinator Owens explained no documents exist in Mr. Houser's records from a specialist recommending surgery.[15]

Mr. Houser appealed the rejection in Grievance No. 1055637.[16] SCI-Phoenix Superintendent and Facility Manager Joseph Terra rejected Mr. Houser's appeal.[17] Superintendent Terra reiterated Mr. Houser must take his pain medication as prescribed to reduce his pain.[18] Superintendent Terra found Mr. Houser continues to "receive appropriate medical care."[19]

Mr. Houser appealed to the Secretary's Office of Inmate Grievances & Appeals.[20] The Chief Grievance Officer denied his appeal with a Final Appeal Decision Dismissal stating Mr. Houser's appeal did not contain the reasons for appealing.[21]

***Mr. Houser's second October 2023 Grievance No. 1057518 against Dr. Letizio.***

Mr. Houser submitted Grievance No. 1057518 on October 18, 2023 to Facility Grievance Coordinator Orlando.[22] Mr. Houser requested to see Dr. Letizio "for pain management and corrective surgery."[23] Dr. Letizio served as the Medical Director at SCI-Phoenix.[24] He wanted to speak with Dr. Letizio "about [his] pain management and corrective surgery, and some other

unattended medical concerns."[25] Mr. Houser reserved his right to seek monetary damages.[26] Mr. Houser named only Dr. Letizio in his grievance.[27]

Facility Grievance Coordinator Owens denied Mr. Houser's request for relief in Grievance No. 1057518.[28] Grievance Coordinator Owens rejected Mr. Houser's grievance because it "disputes previous grievances, appeal decisions, or staff members who rendered those decisions."[29]

Mr. Houser appealed the decision in Grievance No. 1057518.[30] Superintendent Terra rejected Mr. Houser's appeal.[31] Superintendent Terra found the rejection appropriate because the grievance disputed previous grievances, appeal decisions, or staff members who rendered those decisions.[32]

Mr. Houser appealed to the Secretary's Office of Inmate Grievances & Appeals.[33] The Chief Grievance Officer denied his appeal with a Final Appeal Decision Dismissal stating Mr. Houser's appeal did not contain the reasons for appealing.[34]

***Mr. Houser's September 2024 Grievance No. 1109114 against Dr. Letizio.***

Mr. Houser submitted Grievance No. 1109114 on September 18, 2024 to Facility Grievance Coordinator Owens.[35] Mr. Houser explained he read a news article characterizing Dr. Letizio as a pain management doctor.[36] Mr. Houser disagreed with this characterization stating Dr. Letizio reduced his pain medication without a physical examination or consultation.[37] Mr. Houser reiterated his requests for surgery and proper pain management.[38] Mr. Houser named only Dr. Letizio in his grievance.[39]

Grievance Coordinator Owens rejected Grievance No. 1109114 stating his grievance did not indicate a department or facility action or policy personally affected him.[40]

Mr. Houser appealed the rejection arguing the reasons for rejection were frivolous and his grievance allegedly reflected how the news article personally affected him.[41] Deputy

Superintendent Charles Hensley, acting for Superintendent Terra, upheld the rejection decision finding Mr. Houser "chose to appeal rather than resubmit."[42]

Mr. Houser appealed to the Secretary's Office of Inmate Grievances & Appeals.[43] The Secretary's Office of Inmate Grievances & Appeals denied his appeal with a Final Appeal Decision Dismissal stating Mr. Houser did not present his grievance in a courteous manner, did not provide dates when Dr. Letizio denied him care, and did not fix the deficiencies noted on the rejection form.[44]

***Mr. Houser's October 2024 Grievance No. 1115068.***

Mr. Houser submitted Grievance No. 1115068 on October 27, 2024 to Facility Grievance Coordinator Owens.[45] Mr. Houser explained the physician assistant he saw during sick call told Mr. Houser he needed to pay for his medicine refill.[46] He requested an increase in pain medication and the physician assistant declined the increase.[47] Mr. Houser says the physician assistant logged onto the computer and saw Dr. Letizio cancelled Mr. Houser's scheduled orthopedic consult.[48] The physician assistant told Mr. Houser to ask Dr. Letizio to schedule him for an MRI and orthopedic consult.[49] Mr. Houser again requested surgery.[50]

Grievance Coordinator Owens granted staff an additional ten working days to appropriately investigate and respond to Grievance No. 1115068.[51] Grievance Coordinator Owens explained Facility policy requires Mr. Houser to pay for his medicine refill.[52] Mr. Houser's medical records show a scheduled oral surgery consult, not an orthopedic consult.[53] The provider suggested weight loss to help with Mr. Houser's pain in his joints.[54] Grievance Coordinator Owens denied his grievance.[55] There is no evidence Mr. Houser appealed this decision.

***Dr. Letizio leaves SCI-Phoenix.***

Dr. Letizio stopped working as the Medical Director at SCI-Phoenix in March 2025.[56] Dr. Letizio is no longer employed at SCI-Phoenix.[57]

***Mr. Houser sues*.**

Mr. Houser sued Superintendent Terra, former Medical Director Dr. Letizio, Deputy Superintendent Mandy Biser Sipple, Corrections Health Care Administrator Britney Huner, Jane and John Doe Superintendents and Health Care Administrators from SCI-Greene on April 10, 2025.[58] We granted the Commonwealth Defendants' Motion to dismiss on July 10, 2025 giving Mr. Houser leave to amend his Complaint.[59]

Mr. Houser amended his Complaint asserting an Eighth Amendment denial of medical care claim against Superintendent Terra, Deputy Superintendent Sipple, Administrator Huner, former Medical Director Dr. Letizio, and adding as Defendants Deputy Superintendent Charles Hensley and Physician Assistant Joseph Walsh on September 18, 2025.[60] We dismissed claims against Dr. Letizio because Mr. Houser did not allege Dr. Letizio denied him medical care with deliberate indifference.[61] We allowed Mr. Houser to amend his Complaint one last time to allege constitutionally violative conduct against former Medical Director Dr. Letizio.[62]

Mr. Houser filed a second amended Complaint on November 12, 2025.[63] We consolidated Mr. Houser's claims from his amended Complaint (ECF 28) and second amended Complaint (ECF 34) on December 12, 2025.[64]

Mr. Houser repeatedly requests surgery in his complaints.[65] He does not seek monetary damages.[66] He asks we direct the Commonwealth Defendants and Dr. Letizio direct or perform surgery.

The Commonwealth Defendants, Dr. Letizio, and Physician Assistant Walsh moved to dismiss the consolidated claims.[67] We allowed Mr. Houser to proceed against Dr. Letizio within the statute of limitations on allegedly exhausted grievances for denial of medical care and against Superintendent Terra, Administrator Huner, and Deputy Superintendent Sipple for denial of medical care.[68] Deputy Hensley remained unserved at the time of our February 27, 2026 Order.[69] Deputy Hensley confirmed service on March 26, 2026.[70] The parties engaged in discovery.

## II. Analysis

The Commonwealth Defendants and Dr. Letizio timely moved for summary judgment on Mr. Houser's claims.[71] Mr. Houser opposes.[72] We grant the Commonwealth Defendants' motion in full because Mr. Houser did not exhaust his administrative remedies. We grant Dr. Letizio's motion because Dr. Letizio cannot operate on Mr. Houser nor direct his surgery as he is no longer the Medical Director at SCI-Phoenix since before Mr. Houser started this Action.

### A. We grant summary judgment in favor of the Commonwealth Defendants because Mr. Houser did not exhaust his administrative remedies as to Grievance Nos. 155637, 1057518, 1109114, and 1115068.

The Commonwealth Defendants argue Mr. Houser has not exhausted his administrative remedies as required by Congress because Mr. Houser does not name the Commonwealth Defendants in his grievances.[73] The Commonwealth Defendants further argue the Commonwealth Defendants lack personal involvement and were not deliberately indifferent to Mr. Houser's medical issues.[74] Mr. Houser argues he exhausted all administrative remedies available to him.[75] He says he is "well aware of the exhaustion requirements."[76] But Mr. Houser claims he faced "many hurdle[s]" including "difficulties, interference, and retaliatory threats for exercising [his] Constitutional rights."[77] Mr. Houser argues when prison officials affect the exhaustion requirement by interfering with the grievance process it makes "the exhaustion remedy unavailable."[78] He

further argues "nowhere in the inmate handbook does it state that the prisoner must identify the person/persons that the grievance is being filed against."[79]

We agree with the Commonwealth Defendants. Congress, through the Prison Litigation Reform Act, requires incarcerated persons to exhaust all available remedies before filing suit in federal court.[80] Congress prohibits incarcerated persons from bringing actions alleging unconstitutional conduct by facility officials until all available administrative remedies are exhausted.[81] Incarcerated persons must "exhaust administrative remedies even where relief sought—monetary damages—cannot be granted by the administrative process."[82] Congress requires proper exhaustion, which "demands compliance with an agency's deadlines and other critical procedural rules."[83] The correctional facility sets the steps required for compliance with grievance procedures.

The Pennsylvania Department of Corrections has an Official Inmate Grievance System governed by Administrative Directive 804. The Directive creates a three-step Inmate Grievance System: (1) the incarcerated person must submit a grievance to the Facility Grievance Coordinator containing the relevant facts, individuals involved, claims alleged, and relief sought including money damages which is then reviewed by a Grievance Officer (a different official) who submits an initial response; (2) the incarcerated person may appeal the initial response to the Facility Manager who reviews it and issues a decision; and (3) the incarcerated person may appeal to the Secretary of Corrections' Office of Inmate Grievance and Appeals for final review.[84]

In addition to the three-step procedure, the Commonwealth's Administrative Directive 804 Section 1.A. requires an incarcerated person include in his grievance "compensation or other legal relief normally available from a court" which must be requested in "the specific relief sought in his/her initial grievance."[85] So, an incarcerated person seeking monetary relief must include this

request in the grievance.[86] A specific dollar amount is not required but the initial grievance "must make a clear request for compensation."[87] The Commonwealth, through Section 1.A. of the Directive, also requires an incarcerated person to "identify individuals directly involved in the event(s)."[88] Failure to name an involved individual constitutes a failure to exhaust as to the individuals not named.[89]

But the inquiry does not end there. We must consider whether the applicable administrative remedies were "available" to Mr. Houser for unexhausted claims.[90] The Supreme Court outlined the three instances in which administrative remedies are not "available" to excuse the exhaustion requirement: 1) when an administrative procedure "operates as a simple dead end with officers unable or consistently unwilling to provide relief to aggrieved inmates;" 2) where the administrative remedies are so unclear "no ordinary prisoner can make sense of what it demands;" and 3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[91] Our Court of Appeals has a "reluctance to invoke equitable reasons to excuse [an incarcerated person's] failure to exhaust" as Congress requires.[92]

We are guided by our colleagues' findings in similar cases. Judge Leeson granted summary judgment when an incarcerated person did not identify a defendant as an involved individual in a grievance.[93] Judge Brann found an incarcerated person did not exhaust his administrative remedies because he did not name a defendant.[94] Judge Munley granted summary judgment in favor of defendants because the incarcerated person did not exhaust his administrative remedies because he did not identify defendants in the grievances.[95]

We face similar facts. Mr. Houser does not name the Commonwealth Defendants in the four matters purportedly grieved after we reviewed the motions to dismiss: Grievance Nos.

1055637, 1057518, 1109114, and 1115068. Mr. Houser names only Dr. Letizio in these four grievances.[96] Mr. Houser did not name the Commonwealth Defendants. He did not exhaust his administrative remedies.

We are not persuaded by Mr. Houser's arguments of interference by "prison officials." Mr. Houser alone is in control of who he names in his grievances. We are not facing a timeliness question. Mr. Houser does not claim his decision to not name Commonwealth officials is somehow due to interference. He does not fall into one of the exceptional cases where we can excuse the exhaustion requirement. We find Mr. Houser did not exhaust all administrative remedies available to him as to the Commonwealth Defendants.[97]

### B. We dismiss Mr. Houser's claim for deliberate indifference to a serious medical need against Dr. Letizio.

Mr. Houser claims Dr. Letizio acted deliberately indifferent to his serious medical need.[98] Dr. Letizio argues Mr. Houser has not shown Dr. Letizio knew his conduct presented a substantial risk of harm to him and Dr. Letizio acted or failed to act anyway.[99]

Mr. Houser requests surgery from Dr. Letizio. But SCI-Phoenix no longer employs Dr. Letizio as its Medical Director.[100] Dr. Letizio stopped working as the Medical Director at SCI-Phoenix in March 2025.[101] Dr. Letizio cannot perform surgery on Mr. Houser. It is "well established that if the defendants have no power to redress the alleged injuries even if the court were to grant the requested relief, the plaintiff has no case or controversy against those particular defendants."[102] We dismiss Mr. Houser's claim for deliberate indifference to a serious medical need against Dr. Letizio because Dr. Letizio cannot perform surgery on Mr. Houser while he is not employed by SCI-Phoenix.

## III. Conclusion

We grant summary judgment as to the Commonwealth Defendants because Mr. Houser did not exhaust his demand for surgery claims against them nor can he show they somehow interfered with his ability to name the Commonwealth Defendants in the four grievances before us.

Mr. Houser did name Dr. Letizio in his four grievances. But Mr. Houser seeks the singular remedy of compelling Dr. Letizio to direct surgery. Dr. Letizio is unable to redress Mr. Houser's claim as he has not worked at the correctional facility for several years as he left the Facility before Mr. Houser sued him. We grant Dr. Letizio's Motion for summary judgment as well.

---

[1] The Commonwealth Defendants and Dr. Letizio timely moved for summary judgment. ECFs 84, 87. Our Policies require parties moving for relief under Fed. R. Civ. P. 56 to include a Statement of Undisputed Material Facts from each moving defendant and an appendix to support summary judgment. The Commonwealth Defendants filed their Motion (ECF 84), Statement of Undisputed Material Facts ("Commonwealth Defendants SUMF") (ECF 93), Memorandum in support of summary judgment (ECF 92-1), and Joint Appendix ("001a–282a") (ECF 93-1). Dr. Letizio filed his Motion (ECF 87), Statement of Undisputed Material Facts ("Dr. Letizio SUMF") (ECF 95), and Memorandum in support of summary judgment (ECF 94). Mr. Houser opposed the Motion, responded to Dr. Letizio's Statement of Undisputed Material Facts, and included additional undisputed facts and exhibits. ECFs 102, 108. Dr. Letizio filed a Reply and responded to Mr. Houser's Statement of Undisputed Material Facts. ECFs 103, 104. The Commonwealth Defendants filed a Counterstatement of Material Facts. ECF 111.

[2] ECF 28 at 19 (using the pagination assigned by the CM/ECF docketing system).

[3] *Id.* (emphasis added).

[4] Dr. Letizio SUMF ¶ 71.

[5] 013a.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*; Commonwealth Defendants SUMF ¶ 19; Dr. Letizio SUMF ¶ 58.

[10] 012a.

---

[11] 012a. Tylenol #4 has twice the amount of opioid narcotics as Tylenol #3. Dr. Letizio SUMF ¶ 78.

[12] 012a.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] 011a.

[17] 010a.

[18] *Id.*

[19] *Id.*

[20] Neither party adduced evidence showing Mr. Houser's appeal to the Secretary's Office of Inmate Grievances & Appeals. But the adduced evidence includes the Secretary's Office of Inmate Grievances & Appeals's final decision. It follows Mr. Houser appealed to allow the Secretary's Office of Inmate Grievances & Appeals to issue a final decision.

[21] 009a.

[22] Dr. Letizio SUMF ¶ 57; 003a.

[23] 003a.

[24] Dr. Letizio SUMF ¶¶ 71, 72.

[25] 003a.

[26] *Id.*

[27] Commonwealth Defendants SUMF ¶ 18; Dr. Letizio SUMF ¶ 57.

[28] 004a.

[29] *Id.*

[30] 005a.

[31] 006a.

[32] *Id.*

[33] 007a.

---

[34] 002a.

[35] 022a.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] 023a.

[41] 021a.

[42] 020a.

[43] Neither party adduced evidence showing Mr. Houser's appeal to the Secretary's Office of Inmate Grievances & Appeals. But the adduced evidence includes the Secretary's Office of Inmate Grievances & Appeals's final decision. It follows Mr. Houser appealed causing Secretary's Office of Inmate Grievances & Appeals to issue a final decision.

[44] 019a.

[45] 017a.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] 016a.

[52] 015a.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] Dr. Letizio SUMF ¶¶ 71, 72.

[57] *Id.* Dr. Letizio could not direct or perform the surgery now as he no longer works at SCI Phoenix.

[58] Commonwealth Defendants SUMF ¶ 1; ECF 2.

[59] Commonwealth Defendants SUMF ¶ 3.

[60] ECF 28; Commonwealth Defendants SUMF ¶ 6.

[61] ECF 30; Commonwealth Defendants SUMF ¶¶ 8–9.

[62] *Id.*

[63] ECF 34; Commonwealth Defendants SUMF ¶ 10.

[64] ECF 38; Commonwealth Defendants SUMF ¶ 11.

[65] ECFs 28, 34.

[66] *Id.*

[67] ECFs 40, 41; Commonwealth Defendants SUMF ¶ 12.

[68] ECF 48; Commonwealth Defendants SUMF ¶ 13.

[69] ECF 48 at 2 n.1; Commonwealth Defendants SUMF ¶ 14.

[70] ECF 55; Commonwealth Defendants SUMF ¶ 16.

[71] ECFs 84, 87. Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party does not prevent summary judgment. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When determining whether a disputed fact is genuine, we draw all inferences in favor of the non-moving party. *Id*. We do not weigh evidence or make credibility determinations. *Spivack v. City of Phila.*, 109 F.4th 158, 165–66 (3d Cir. 2024) (citing *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021)). The Supreme Court "outlined two closely related methods for a movant to succeed at summary judgment": (1) under the "standard approach," the moving party may produce material facts, genuinely undisputed, entitling it to judgment as a matter of law; and (2) under the "*Celotex* approach," the moving party "may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case … *on which that party will bear the burden of proof at trial*.'" *Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment is appropriate where the nonmoving party does not make a showing sufficient

to establish the existence of an element essential to its case and on which it bears the burden of proof at trial. *SodexoMAGIC*, 24 F.4th at 204 (citing *Celotex Corp.*, 477 U.S. at 322).

We "view the facts and draw reasonable inferences 'in the light most favorable to'" Mr. Houser as the party opposing the summary judgment motions. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).

[72] ECF 102. Mr. Houser filed an "Emergency Notice to the Court to Address Important Matters in the Interest of Justice" after the Commonwealth Defendants and Dr. Letizio moved for summary judgment. ECF 98. Mr. Houser claims SCI-Phoenix staff and Defendants are tampering with his mail, his injuries are worsening, and he requests we order surgery. But we cannot address mailing issues or claims based on facts not before us in a pleading. *See Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).").

[73] ECF 92-1 at 6.

[74] *Id.* at 7–12.

[75] ECF 102 at 3.

[76] *Id.*

[77] *Id.*

[78] *Id.* at 5.

[79] *Id.* at 6.

[80] 42 U.S.C. § 1997e(a).

[81] *Oliver v. Wetzel*, 861 F. App'x 509, 516 (3d Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 84 (2006)).

[82] *Woodford*, 548 U.S. at 85.

[83] *Id.* at 90.

[84] *Prater v. Dep't of Corr.*, 76 F.4th 184, 203–04 (3d Cir. 2023).

[85] DC-ADM 804, Section 1.A.11.d.

[86] *Wright v. Fedder*, No. 23-5099, 2025 WL 2825588, at *5 (E.D. Pa. Oct. 3, 2025) (quoting *Stanley v. Little*, No. 23-4571, 2024 WL 3678987, at *5 (E.D. Pa. Aug. 6, 2024)).

[87] *Id.*

[88] DCM-ADM 804, Section 1.A.11.b ("The [incarcerated] person shall identify individuals directly involved in the event(s).")

[89] *See Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004).

[90] *Ross v. Blake*, 578 U.S. 632, 642–45 (2016).

[91] *Id.*

[92] *Davis v. Warman*, 49 F.App'x 365, 368 (3d Cir. 2002).

[93] *Molina v. Gordon*, No. 25-77, 2026 WL 2164722, at *5 (E.D. Pa. July 27, 2026) ("…Molina also failed to identify Gordon as the individual involved in the events mentioned therein…Although Molina referred to Gordon in his appeal and in his Complaint before this Court…he did not refer to Gordon in Grievance No. 1099536…He thus failed to exhaust his claims against Gordon which stem from this Grievance.").

[94] *Mutschler v. Tritt*, No. 14-2477, 2020 WL 2128874, at *3 (M.D. Pa. May 5, 2020), *aff'd in part, rev'd on other grounds*, *Mutschler v. Tritt*, No. 20-2022, 2021 WL 545810, at *2 (3d Cir. Nov. 22, 2021).

[95] *Wood v. Detwiler*, No. 16-2450, 2019 WL 1330447, at *5 (M.D. Pa. Mar. 25, 2019).

[96] 003a, 013a, 017a, 022a.

[97] In addition to not naming the Commonwealth Defendants in the four grievances at issue, neither party adduced evidence Mr. Houser appealed the decision in Grievance No. 1115068. Mr. Houser did not exhaust his administrative remedies by not naming the Commonwealth Defendants and not appealing the decision in Grievance No. 1115068.

[98] ECF 34.

[99] ECF 94 at 9–16.

[100] Dr. Letizio SUMF ¶¶ 71, 72.

[101] *Id.*

[102] *Ivester v. Sweeny*, No. 19-16559, 2022 WL 17733676, at *8 (D.N.J. Dec. 16, 2022). "*See Scott v. DiGuglielmo*, 615 F. Supp. 2d 368, 374 (E.D. Pa. 2009) (dismissing claims against prison administrators because 'they have no way of complying with the requested injunction, if granted') (citing *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001)); *see also Snyder v. Millersville Univ.*, No. 07–1660, 2008 WL 5093140, at *12 (E.D. Pa. Dec. 3, 2008) ('In proceeding instead only against individuals who do not have the authority to afford her the desired relief, however, Plaintiff's request for a mandatory injunction necessarily fails.'); *Williams v. Doyle*, 494 F. Supp. 2d 1019, 1024 (W.D. Wis. 2007) ('[A] claim for injunctive relief can stand only against someone who has the authority to grant it.')."). *Ivester*, 2022 WL 17733676, at *8.